## Case No. 9,271.

### MASURY v. TIEMANN et al.

[8 Blatchf. 426; 4 Fish. Pat. Cas. 524; Merw. Pat. Inv. 113]. [1]

Circuit Court, S. D. New York.    May 6, 1871.

PATENTS—PAINT CANS—RING OF THIN BRASS—METAL CAP.

1. The letters patent granted to John W. Masury. July 12th, 1859, for an "improvement in paint cans, &c.," are valid.

2. The claim of the patent is, "the construction of a metallic can, for hermetically sealing paints and other substances, having attached thereto a rim or ring of thin brass or other soft metal, in such a manner that the top or cover may be removed by severing the said rim or ring of brass or other soft metal with a penknife or other sharp instrument, in the manner and for the purposes herein described and represented, or its equivalent." The value of the patented can, as a can for holding paints liquid with oil, is, not only that it can be easily opened, but that, by severing the thin metal near the exterior or wall of the can, the entire contents of the can can be removed without difficulty and without waste, while the can is as strong to resist injury as if there were no thin metal in it.

3. Such patented can is not anticipated by a can having a hole in the middle of its top covered by a thin metal cap, removable by being pried up or severed, the rim or ring between the cap and the edge of the can not being of thin metal.

[This was a bill in equity by John W. Masury against Daniel F. Tiemann and others, to restrain the defendant from infringing letters patent No. 24,748, granted to complainant.]

W. Howard Wait, for plaintiff.
Orlando L. Stewart, for defendants.

BLATCHFORD, District Judge.   This suit is founded on letters patent of the United States, granted to the plaintiff, July 12th, 1859, for an "improvement in paint cans, &c." The specification describes the invention as "a new and improved can for putting up and hermetically sealing paints and other substances." It says: "The nature of my invention consists in the construction of a tinned or galvanized iron can, of any known form, with a rim or ring of thin soft metal

[1] [Reported by Hon. Samuel Blatchford, District Judge, reprinted in 4 Fish. Pat. Cas. 524, and here republished by permission.]

attached to the top edge of the same. * * The principal objection to the use of fruits and other edibles put up in soldered tin cans, is the difficulty of opening the same without much labor and the convenience of proper tools. In the use of paints put up in hermetically sealed cans, this objection is most formidable. To remove the top from a small can of paint without injury to the contents thereof, is a task very difficult to accomplish. My invention obviates these difficulties, and presents a can possessing all the advantages of the ordinary can, and, in addition thereto, the extraordinary advantage of being readily openable by the most inexperienced person. To that end, I construct the body of the can, and attach the bottom thereto in the ordinary way; but, for the top of the can, in the place of using material of the same weight and thickness as for the other parts, I take thin brass or other soft metal, and attach a rim or ring thereof to the top of the can, and secure the same by soldering, as in the ordinary mode. For ..ealing the can after it shall have received its contents, I take a disk of tin, and solder it to the rim or ring, leaving between the said disk and the edge of the can sufficient space to admit the passage of a penknife blade. The can is then, in all respects, like the ordinary tin can hermetically sealed, except that the cover of my newly invented can may be removed by severing the thin brass rim or ring with a penknife or other sharp instrument." The claim is: "The construction of a metallic can, for hermetically sealing paints and other substances, having attached thereto a rim or ring of thin brass or other soft metal, in such a manner that the top or cover may be removed by severing the said rim or ring of brass or other soft metal with a penknife or other sharp instrument, in the manner and for the purposes herein described and represented, or its equivalent."

The infringement charged in the bill is, that the defendants have made and caused to be made, for their use, cans embodying the patented invention, and have vended paints and colors put up in cans so constructed.

The answer contains a general averment of want of novelty in the invention, without any specification as to prior use or knowledge, and denies the infringement. A mass of testimony has been taken, without objection, to prove prior use and knowledge of the invention. The only question in litigation is that of novelty. The utility of the invention is shown to be very considerable, especially for the purpose of putting up in the patented cans liquid or semi-fluid articles, such as paints liquid with oil. The claim on the part of the defendants on the question of novelty is, that they themselves used cans embodying the invention prior to the date of the plaintiff's discovery, such cans having been made by one Charles S. Hine. The value of the patented can in respect to semi-fluid paints is, that, while it is perfectly tight, after it is sealed by soldering, and can be easily opened, it can also be so opened, by severing the thin metal top near the exterior wall of the can, that the entire contents of the can can be removed without difficulty and without waste, because the opening left when the top is taken off is substantially of the same dimensions as the area of a horizontal section of the can. Moreover, the use of the rim or ring of thin metal does not detract from the strength of the can, or from its capacity to resist injury, the salient parts of it exposed to contact in handling and transportation being of the thicker metal which composes the body of the can, and the disk in the middle of the top, and between which and the edge of the can such rim or ring is interposed, not being made of the thin metal which forms the rim or ring.

The plaintiff made his invention about two months before the date of his patent. The defendants claim to have shown by testimony, that, in 1852, they substituted in use for a can with a loose or slip cover, a can having a hole in the middle of its top, covered by a thin brass cap, on which were shown in relief, by being struck through from the other side by a die, the name of the defendants' firm and other words; and that this brass cap could be easily removed by inserting a knife under its edge and prying it up, or by severing it. But this can was not the equivalent of the plaintiff's, and did not embody the invention. The rim or ring between the brass cap and the edge of the can was not of thin metal, capable of being severed, but was of the same thick metal as the body and bottom of the can; and, when the cap was removed, the difficulty existed of getting at so much of the contents of the can as lay in the recess formed inside between the thick ring and the body of the can—a difficulty which the plaintiff's invention obviates.

The defendants also claim to have shown that, about 1853, they adopted a form of can like the one of 1852, in all respects, except that the cap, instead of being of brass, was, in order to make it cheaper, made of thinner tin than the rest of the can, such cap having on it, in relief, the same words, and being capable of being removed in the same manner, as the brass cap. But this can was no nearer to the plaintiff's invention than its predecessor of 1852.

The defendants also claim to have shown that, in the winter of 1856–7, they adopted a form of can, having a rim or ring of thin tin, and a centre cap of thick tin, the rim and cap being, each, a horizontal plane, and the cap not being marked with any words in relief; and that, after about a year, they modified the form slightly, by turning down, all around the inner edge of the thin rim or ring, or making a shoulder on such edge. This can was the same thing as the plaintiff's. That they adopted such a can, and

at some time, is certain. The point is as to the time. On a careful review of the whole evidence, especially that derived from the defendants' books of account, and their circular to the trade, in January, 1860, I am satisfied that they had no such can, and that no such can was made by Mr. Hine, or for them, until some time in 1859, after the date of the plaintiff's invention. It would be enough to say, that, as the burden of proof is on the defendants, they have not satisfactorily shown that they preceded the plaintiff with their can. But it is shown, I think, affirmatively, that he preceded them. The controlling circumstance in the case, which outweighs the unreliable and unsupported evidence of mere memory, and is sustained by every piece of evidence in the case, derived from contemporaneous records in books, is the annual circular or catalogue, which the defendants issued on the 1st of January, 1860, for the use of their customers, being a pamphlet of thirty pages, giving a list of paints and prices. That pamphlet says: "Oil colors. To afford greater facilities in opening the cans, we have had a quality of tin imported expressly for us, from which the tops of all cans (of and under 6 lbs.) are made. This tin, while it in no way lessens the strength of the cans, is easily and rapidly cut with a stout penknife. The tin should be cut between the caps and the edge. Note. Customers wishing this style of can at the present time (January) must be particular in mentioning it in their orders, as all our stock on hand is not put up in this manner." This was the first time any notice of such a can had appeared in any of the defendants' catalogues, and it is impossible to resist the conclusion, that such a can was, at the time of this catalogue, a new style of can, that so useful a thing was announced as early as possible after its adoption, and that it is not true that it had been in use by the defendants since 1857, as claimed.

There must be a decree for the plaintiff, for a perpetual injunction, and an account of profits, with costs.

[For another case involving this patent, see Masury v. Anderson, Case No. 9,270.]